HAYS v. JAMES REES & SONS CO.

(Circuit Court of Appeals, Third Circuit. May 8, 1899.)

No. 20, March Term.

MARITIME LIENS—EQUIPMENT FOR VESSEL—NECESSITY FOR DELIVERY.

Under the Pennsylvania statutes, either Act June 13, 1836, as amended by Act June 24, 1895, or Act April 20, 1858, relating to liens for work done or materials furnished in the building or equipment of vessels, a delivery of an article made for the equipment of a steamer, either by placing it in the vessel or delivering it to the owners, is essential to create a lien on the vessel therefor.

Appeal from the District Court of the United States for the Western District of Pennsylvania.

Charles S. Crawford, for appellant.

J. S. Ferguson, for appellee.

Before ACHESON and DALLAS, Circuit Judges, and KIRKPATRICK, District Judge.

DALLAS, Circuit Judge. The appellee, upon the order of the owners of the steamer Cyclone, made a shaft, bedplate, and pillow block for that vessel. The price agreed upon was $725.40. The work was done, and what thereafter occurred appears from the testimony of Mr. James M. Rees, as follows:

"Q. Captain, you are the president of the James Rees & Sons Company? A. No, sir; vice president and general manager. Q. Captain, your claim against the steamer Cyclone has been objected to by Mr. Crawford, for the reason that it appears by the testimony of D. A. Rees that your charges under date of December 31, 1896, amounting to $687.16, were for one new shaft extra for the boat, and fittings,—material charged for which had not been delivered. I will ask you whether or not that shaft is still in the shop of your company. A. I believe it is: yes, sir. Q. And will you explain why the shaft was permitted to remain there, and why it wasn't delivered to, and put upon, the boat? A. The shaft was ordered as an extra, and made some time after being received, and then the fittings for the shaft was ordered, so that, in case of emergency, they would have the extra shaft ready to put on the boat in a short space of time, without losing or causing any delay. Q. Mr. D. A. Rees testified that the shaft and fittings were permitted to remain in your shop at the request of one of the owners of the Cyclone. Do you know anything about that? A. Yes, sir; I personally requested Mr. Posey to take the shaft away, as it was in the way. He then told me to fit it up as far as I could, and hold it subject to their order where to deliver it, and, in case I could hold it there, as long as possible to do so, but, when it became too much in the road, then to set it out on the bank, any place where they might get it. Now, that was somewheres about a year ago. On becoming busy last fall,—in January,—I took everything that was in the shop, and piled it at one end, in a promiscuous pile, by the crane. That shaft to-day, among three that was there, is on top of four pairs of cylinders and two other shafts, and about eight feet from the ground. Q. Did you take any note from the steamer Cyclone for your account or any part of it? A. Yes, sir. Q. I show you note dated July 1, 1897, made by the steamer Cyclone and owners to the order of your company for $873.53, payable two months after date, and ask you whether or not that note included the charges for the extra shaft and fittings. A. Yes, sir; that is a note received in our account, and includes the shaft, six months after we had entered it in our books in settlement of the account up to that date."

Upon the facts and under the circumstances disclosed by this evidence, did James Rees & Sons Company have a lien for the shaft and other articles referred to? The Cyclone having been sold under admiralty process, and the proceeds brought into the district court for distribution, that court held that such a lien did exist, and decreed accordingly. The learned judge found that the articles had been delivered, and therefore held that the case fell within the purview of the Pennsylvania statute of June 13, 1836, as amended by the act of June 24, 1895, by which a lien is given "for all work done and materials and supplies furnished or provided in the building, repairing, fitting, furnishing, supplying or equipping of such ships or vessels." We are unable to concur in this view. We incline to think

that the act of April 20, 1858, is more nearly applicable than that of June 24, 1895; but, be this as it may, we do not doubt that delivery is, under either act, essential to lien. It is not necessary to decide whether it be requisite that the articles should be placed upon the vessel itself; but that the possession must be transferred, either to the vessel or to its owner or proper representative, we think is unquestionable. James Dalzell's Son & Co. v. The Daniel Kaine, 31 Fed. 748. In the present case there was in fact no change of possession, and the reason for this is not, in our opinion, material.

The motion to quash is not well founded. The position now assumed in support of that motion was not taken in the court below, and the fact that the appellant bought the steamer Cyclone from the sheriff of Washington county, on the 6th day of May, 1898, is distinctly shown by the record before us.

The decree of the district court is reversed, and the cause will be remanded to that court for further proceedings to be there taken in pursuance of this determination.